375 F.2d 529
 In the Matter of Everette Marshall, Alleged Bankrupt.
Everette MARSHALL, Appellant,
v.
Earl SHOWALTER, Jr., d.b.a. Showalter Custom Service, Valley Concrete Company and W. F. Woodside, d.b.a. Woodside Seed Growers, Appellees.
 No. 8578.
 United States Court of Appeals Tenth Circuit.
 January 31, 1967.
 Rehearing Denied May 19, 1967.
 
 1
 Haskell, Helmick, Carpenter & Evans and Forrest E. Good, Denver, Colo., for appellant.
 
 
 2
 Rexford L. Mitchell, Rocky Ford, Colo., and David A. Gushurst, La Junta, Colo., for appellees.
 
 
 3
 Before BREITENSTEIN and SETH, Circuit Judges, and KERR, District Judge.
 
 
 4
 KERR, District Judge.
 
 
 5
 In this appeal, Everette Marshall, the bankrupt, challenges the decision of the District Court affirming the Order of the Referee in Bankruptcy by which appellant was adjudicated a bankrupt.[1] The case involves the construction of Sections 3(a) (1) and 67 of the Bankruptcy Act, defining what constitutes an act of bankruptcy and what amounts to insolvency.[2]
 
 
 6
 On July 5, 1963, appellant, Everette Marshall, and his wife, Harriet Marshall, sold their farm to a group of individuals who thereupon formed the Marshall Land and Cattle Co., Inc. In consideration for the sale, the corporation agreed to pay Marshall's personal indebtedness which was approximately $213,000.00, and executed its promissory note to the Marshalls and their son, Robert, in the face amount of $300,000.00. The principals of the corporation individually guaranteed the payment of the note. Shortly thereafter, Robert Marshall assigned his interest in the note to his parents. On June 1, 1964, Everette Marshall transferred his one-half interest in the note to his wife, Harriet. At that time $15,000.00 had been paid by the Corporation and the balance due on the note was $285,000.00.
 
 
 7
 On September 4, 1964, appellant's creditors filed a petition to have him adjudicated bankrupt on the ground that he committed an act of bankruptcy on June 1, 1964, by the assignment of his interest in the promissory note to his wife. Appellant denied that he was insolvent at the time of the transfer and that he was rendered insolvent thereby, contending that his equitable interest in the note and his contract rights with the Marshall Land and Cattle Company constituted assets sufficient to prove his solvency. After a hearing on the creditors' petition and appellant's answer, the Referee prepared and filed a Memorandum Opinion, Findings of Fact and Conclusions of Law and ruled that Everette Marshall was an involuntary bankrupt under the Bankruptcy Act. The referee's holding was affirmed by the District Court which held that on June 1, 1964, appellant performed an act of bankruptcy under Sections 3(a) (1) and 67 of the Bankruptcy Act by transferring his one-half interest in the note to his wife without fair consideration, thereby rendering himself insolvent.
 
 
 8
 As the District Court found, appellant's assets on June 1, 1964, were a $14,000.00 claim against the Marshall Land and Cattle Co., Inc., for personal expenses, and another claim against that company for unpaid salary. He had a life interest subject to a second mortgage on his home, some small insurance policies, some equity in a tractor, and the equity, if any, in the note which he had assigned to his wife. His liabilities on June 1, 1964, were approximately $157,500.00, which was the balance due his personal creditors whom the Marshall Land and Cattle Company agreed to pay as part of the consideration for the sale of appellant's farm, and a $15,000.00 liability to the Brighton National Bank secured by a mortgage on a tractor.
 
 
 9
 Under the facts and circumstances of this case, the District Court correctly found that on June 1, 1964, appellant was personally indebted to his creditors in the amount of $157,500.00. Appellant's creditors were not parties to the agreement between Marshall and the Marshall Land and Cattle Company; they did not consent to an assumption by the Company of the obligation to pay appellant's debts. At no time was the Corporation substituted as the debtor in place of appellant. As shown by the record, appellant's contract right to hold the Marshall Land and Cattle Company liable for the payment of his debts had no monetary value and did not amount to a discharge of his personal liability to his creditors. Since appellant had not been released by his creditors from his obligation to pay his debts, the debtor-creditor relationship continued. As between appellant and his creditors, appellant remained personally and solely liable for the payment of the $157,500.00.
 
 
 10
 Likewise without merit is appellant's contention that he retained an equity in his one-half interest in the promissory note, and that such equitable interest constituted an asset on and after June 1, 1964. On that date, appellant assigned to his wife "all of his right, title and interest" in the $300,000.00 note. Appellant concedes that the assignment was, on its face, absolute. He attempts to explain, however, that the transfer was made merely to expedite the collection of the note from the individual members of the corporation. The District Court correctly found that, according to the evidence, Harriet Marshall did not take and hold appellant's interest in the note in trust for him and his creditors. The transfer of his interest was absolute and unrestricted. There was no agreement requiring Harriet Marshall to give appellant and his creditors the proceeds which might be realized from any collection suits. We accept the conclusion of the District Court that under the law of Colorado, a wife is not under a legal or equitable duty to apply her funds to her husband's debts.
 
 
 11
 Having concluded that the assets of appellant do not include the contractual right to recover over against the Marshall Land and Cattle Company for the payment of his personal debts, nor the alleged equity in his one-half interest in the promissory note, we turn now to the question of whether the transfer of appellant's right, title and interest in the promissory note on June 1, 1964, constituted an act of bankruptcy under Section 3(a) (1) of the Bankruptcy Act.[3] The second phrase of that section is applicable to the facts of this case, for the crucial issue is whether appellant fraudulently transferred his property. Section 3(a) (1) refers to Section 67 for the determination of that question. Under Section 67(d) (2) (a) a transfer of property is fraudulent if made without fair consideration, and also if made by a debtor who is or will be thereby rendered insolvent.[4] The intent of the debtor is expressly eliminated from consideration. The record indisputably supports the District Court's finding that the consideration of One Dollar for the transfer of the $300,000.00 note was less than fair consideration.
 
 
 12
 The final issue to be resolved is whether the creditors must prove appellant's insolvency at the time of the transfer, or whether it is sufficient to prove that he was rendered insolvent by the transfer. A person is insolvent "when the present fair salable value of his property is less than the amount required to pay his debts; * * *."[5] To come within the provisions of Section 67(d) (2) (a) the transfer is fraudulent if the debtor is insolvent at the time of the transfer, or if he is rendered insolvent as a result of the transfer. These are alternative provisions. They are unambiguous. The District Court correctly construed the law as not requiring a finding of insolvency at the date of the transfer. The facts and the law support the court's conclusion that appellant's transfer to his wife of all his right, title and interest in the promissory note of the face value of $285,000.00, was made without fair consideration, and that said transfer rendered appellant insolvent. The act of bankruptcy under Section 3 (a) (1) occurred upon the transfer within the meaning of Section 67(d) (2) (a) on June 1, 1964, within one year prior to September 4, 1964, the date of the creditors' petition for involuntary bankruptcy of appellant.
 
 
 13
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 Marshall v. Showalter, Jr., et al., D.C. Colo., 245 F.Supp. 365 (1965)
 
 
 [2]
 11 U.S.C. § 21(a) (1); and 11 U.S.C. § 107
 
 
 [3]
 The first act of bankruptcy in Section 3(a) (1) of the Act reads as follows: "Acts of bankruptcy by a person shall consist of his having (1) concealed, removed, or permitted to be concealed or removed any part of his property, with intent to hinder, delay, or defraud his creditors or any of them, or made or suffered a transfer of any of his property, fraudulent under the provisions of section 67 or 70 of this Act; * * *."
 
 
 [4]
 Section 67(d) (2) (a) provides in pertinent part as follows: "Every transfer made and every obligation incurred by a debtor within one year prior to the filing of a petition initiating a proceeding under this title by or against him is fraudulent (a) as to creditors existing at the time of such transfer or obligation, if made or incurred without fair consideration by a debtor who is or will be thereby rendered insolvent, without regard to his actual intent; * * *."
 
 
 [5]
 Section 67(d) (1) (d) of the Bankruptcy Act; 11 U.S.C. § 107(d) (1) (d)