In the Matter of **CHRISTIAN AND PORTER ALUMINUM COMPANY, Bankrupt.**

**No. 111649.**

United States District Court, N. D. California.

Sept. 30, 1970.

Robert J. Dauphin, San Francisco, Cal., for bankrupt.

Robert R. Barton, Oakland, Cal., for petitioners.

*Order Denying Petition for Review*

GERALD S. LEVIN, District Judge.

### Background

The present action arises from an involuntary petition in bankruptcy filed initially on August 9, 1968, against Christian and Porter Aluminum Company by three of its creditors, Ace Glass Company, Aluminite Manufacturing Company, Inc., and Anderson & Perkins, Inc. The alleged bankrupt filed its answer thereto on September 20, 1968, and the matter was tried before the Referee in Bankruptcy on December 19 and 20, 1968, and January 10, February 10 and 18, 1969.

Thereafter, additional creditors applied to intervene in the involuntary petition, and on March 3, 1969, the Referee filed an order granting such intervention. Also on March 3, 1969, the Referee filed a memorandum opinion setting out certain findings of fact and conclusions of law, and pursuant thereto an adjudication of bankruptcy was filed on March 7, 1969. On March 14, 1969, the alleged bankrupt filed its timely petition for review to this court.

The alleged bankrupt filed an opening memorandum on December 4, 1969, and a closing memorandum on March 27, 1970, both in support of its petition for review, and the petitioning creditors filed a memorandum in opposition on February 19, 1970. In view of the seriousness of the issues raised by the alleged bankrupt and the brevity of the Referee's findings of fact and conclusions of law, this court ordered the matter recommitted to the Referee on April 14, 1970, with instructions for further findings.

Following said recommittal, the attorney for the alleged bankrupt and the attorney for the creditors each submitted findings of fact and conclusions of law for the benefit of the Referee. On July 22, 1970, the Referee ordered that the findings of fact and conclusions of law submitted by the attorney for the creditors be adopted to amend and supplement those previously filed by the Referee on March 3, 1969.

The alleged bankrupt thereupon requested that it be granted time in which to file a supplemental memorandum in support of its petition for review. The alleged bankrupt was given until September 1, 1970, to file such brief or memorandum, and it filed its memorandum herein on September 10, 1970.

### Discussion

The memoranda submitted by Christian and Porter indicate that it bases its petition for review on alleged errors both substantive and procedural committed by the Referee. Christian and Porter argues that although the Referee found several elements of several asserted acts of bankruptcy, the Referee did not (and could not) find all the elements of any one act of bankruptcy. Furthermore, Christian and Porter contends that the original involuntary petition in bankruptcy was insufficient since not presented by the requisite number of permissible creditors and that the Referee erred in permitting an amendment to said petition at the end of the trial in order that it might conform to the proof adduced at trial.

■ At the outset, the court notes that its scope of review is limited by General Order 47 in Bankruptcy to accepting the Referee's findings of fact unless they are clearly erroneous. Union Bank v. Hoskins, 422 F.2d 1311, 1312 (9th Cir. 1970); In re Snow Camp Logging Company, 168 F.Supp. 420, 426 (N.D.Cal. 1958), modified, Peters v. Lines, 275 F. 2d 919 (9th Cir. 1960). Although the

evidence here and the inferences to be drawn therefrom are not free from doubt, this court cannot say that the Referee's findings are clearly erroneous, and this court accepts and adopts them. See Chase Capital Corporation v. Bumb, 336 F.2d 1000 (9th Cir. 1964), cert. den., 380 U.S. 934, 85 S.Ct. 941, 13 L.Ed.2d 831 (1965), reh. den., 380 U.S. 989, 85 S.Ct. 1329, 14 L.Ed.2d 283 (1965).

The "clearly erroneous" standard applies, however, only to the Referee's findings of fact; this court is not bound by the Referee's conclusions of law if they are found to be erroneous. In re Fort Smith Acoustical Company, 310 F.Supp. 226, 228 (W.D.Ark.1970); In re Lightner, 184 F.Supp. 825, 826 (S.D.Cal.1960). It is to the Referee's challenged conclusions of law which we now turn.

### A. *An Act of Bankruptcy Was Committed*

■■ Prerequisite to an adjudication of bankruptcy following the filing of an involuntary petition is a finding that the alleged bankrupt has committed at least one (but not necessarily more than one) specified act of bankruptcy. In the present case the Referee found that Christian and Porter committed the following acts of bankruptcy:

\* \* \* \* \* \*

5. Christian and Porter Aluminum Company committed an act of bankruptcy in that on or about June 28, 1968, and by a series of transactions commenced June 14, 1968 and completed July 12, 1968, it transferred certain of its non-exempt property, consisting of all inventory, stock-in-trade, equipment, machinery, tools, accounts receivable, choses in action, chattels and chattel paper, accounts, contract rights, general intangibles, to Harbor Steel, Inc. with actual intent to hinder, delay and defraud the then existing creditors of said Christian & Porter Aluminum Company.

6. The transfer by Christian & Porter of all of its assets to Harbor Steel—and to its agents, Titus, Knowles and Alameda Diversified Industries—made during the period June 14, 1968 to July 12, 1968, constituted an act of bankruptcy in that it was made without fair consideration, at a time when Christian & Porter had creditors and was then or was thereby rendered insolvent.

7. Said transfer constituted an act of bankruptcy in that it was made without fair consideration, at a time when Christian & Porter had creditors and was engaged in a business for which the property remaining in its hands was unreasonably small capital.

8. Said transfer constituted an act of bankruptcy in that it was made without fair consideration, at a time when said Christian & Porter Aluminum Company had creditors and intended to incur debts beyond its ability to pay as they matured.

\* \* \* \* \* \*

The activities referred to in Conclusion 5 above and the conclusions drawn therefrom are supported by the Referee's findings of fact and constitute a fraudulent transfer which is an act of bankruptcy. *See* Bankruptcy Act, §§ 3, sub. a(1) and 67, sub. d(2) (d). *See generally* Lynch v. La Fonte, 37 F.Supp. 499, 503–505 (S.D.Cal.1941).

■ The activities referred to in Conclusion 6 above and the conclusions drawn therefrom are likewise supported by the Referee's findings of fact and constitute a fraudulent transfer which is an act of bankruptcy. *See* Bankruptcy Act, §§ 3, sub. a(1) and 67, sub. d(2) (a). Section 67, sub. d(2) requires that the transfer in question be made without fair consideration and that such transfer be made when the alleged bankrupt is insolvent or renders him so. Marshall v. Showalter, 375 F.2d 529, 531 (10th Cir. 1967); Williams v. Twin City Company, 251 F.2d 678, 681 (9th Cir. 1958). What constitutes "fair consideration" is a question of law, but it depends in large measure on the supporting determination of

fact made by the Referee. The determination of value is, of course, one of fact, and the court accepts that made by the Referee here since not clearly erroneous. *See* Williams v. Wirt, 423 F.2d 761 (5th Cir. 1970).

Much controversy has arisen over the nature and legal characterization of one of the transactions alluded to in Conclusion 6, namely the transfer of some $32,-430 from Nick Christian (the president of Christian and Porter at the times here material) to W. J. Knowles, an attorney who represented DeWayne Titus and Harbor Steel, Inc. Nick Christian procured this sum by emptying the Christian and Porter commercial account at United California Bank. Christian and Porter now contends that the transfer to Knowles was not fraudulent and was made to protect, not hinder, existing creditors. Although such transfer would not constitute a fraudulent conveyance under other circumstances (*see*, e.g., In re George Lampros, Inc., 18 F.2d 633, 634–635 (D.Mass.1927)), the Referee found to the contrary here and this court is in agreement with that conclusion.

In like manner, the activities and conclusions contained in Conclusions 7 and 8 above accurately reflect the facts on which they are based and constitute, respectively, acts of bankruptcy within the meaning of Bankruptcy Act § 67, sub. d(2) (b) and (c). *See*, e.g., K. King & G. Shuler Corporation v. Petitioning Creditors, 427 F.2d 689, 691 (9th Cir. 1970); Mente & Co., Inc. et al. v. Old River Co., 17 F.2d 350, 351 (5th Cir. 1927).

### B. *The Involuntary Petition Was Proper*

■ Bankruptcy Act § 59, subd. b provides that an involuntary petition in bankruptcy may only be filed by "three or more creditors who have provable claims * * *." Christian and Porter argues here that at least one and possibly two of the original three petitioning creditors were not qualified to do so and that this defect was not and could not be cured by the later intervention of additional qualified creditors.

Christian and Porter argues that Ace Glass Company, one of the original petitioning creditors, received $20,000 within four months last of the filing of the creditors' petition, and hence received a voidable preference if Christian and Porter were insolvent at that time. This contention falls, however, by the admission that Christian and Porter was not insolvent at that time. Christian and Porter also impugns the motives of Ace Glass Company in filing the creditors' petition, suggesting that such improper motives, if they existed, would render the actions of Ace Glass Company suspect. This contention, too, must fall under the settled rule that the motives of petitioning creditors are irrelevant so long as their petition is sufficient on its face. In re National Motorship Corporation, 7 F.Supp. 1001 (S.D.N.Y.1934); 1 Collier on Bankruptcy § 3.05 at 406 (14th ed. 1969); 3 Collier § 59.37 at 671.

■ Christian and Porter next challenges the sufficiency of Anderson & Perkins, Inc., another of the original petitioning creditors. It is argued that Anderson & Perkins, Inc. is a collection agency and an assignee of others' claims in this proceeding, and hence not a "beneficial owner" of its claims as required by General Order 5 in Bankruptcy. As one leading commentator has summarized this matter, General Order 5 excludes, "for instance, an assignee for collection only from joining in his own name in a petition against the bankrupt." 3 Collier § 59.05 [3.2] at 567. *But cf.* Shingleton v. Armour Boulevard Corporation, 107 F.2d 440, 445 (8th Cir. 1939); In

re Veler, 249 F. 633, 637–638 (6th Cir. 1918).

The petitioning creditors concede that the case law is not dispositive of whether Anderson & Perkins, Inc. was entitled to be counted as a petitioning creditor. Based on the documents and argument before this court, it appears as though Anderson & Perkins, Inc. did not comply with the requirements of General Order 5 and should not have been counted as a valid petitioning creditor. Nonetheless, the involuntary petition must stand as valid because of the intervention of additional concededly proper petitioning creditors, whose number brings those required past the minimum of three. The law on this point was summarized as follows in Providence Box & Lumber Co. v. Goodrich-Daniell Lumber Corp., 80 F.Supp. 61, 63 (D.Vt.1948):

> These sections permit creditors to intervene in support of the petition and thus prevent the dismissal by the court where it is shown that one of the several petitioners is disqualified from joining in the petition.
>
> \*   \*   \*   \*   \*   \*
>
> Creditors, by intervening in support of the petition, acquire the status of petitioning creditors as of the date on which the original petition was filed, And since section 59, sub. f provides that a creditor "may at any time" intervene and join in the petition, the creditor's right to intervene, within the proper time, is not subject to the court's discretion. Intervention to join in the petition, as a general rule, is a matter of right. [Citation omitted.]

See also In re Acord Ventilating Company, 221 F.2d 899, 901 (7th Cir. 1955); In re Oakland Popcorn Supply, Inc., 213 F.Supp. 665, 668 (N.D.Cal.1963); 3 Collier § 59.28 at 644 and § 59.30 at 646–647.

### C. The Amendment to the Involuntary Petition was Proper

On the final day of the trial below, the attorney for the petitioning creditors made a written motion to amend the creditors' petition to add an additional act of bankruptcy which would conform to proof. The Referee granted this motion and permitted the following amendment to be added to the creditors' petition:

> Paragraph 11. Within four months next preceding the filing of said petition, the said Christian and Porter Aluminum Company committed an act of bankruptcy, in that on or about June 24, 1968, it transferred certain of its nonexempt property, consisting of cash in the sum of $32,430, to W. James Knowles, aith [sic] actual intent to hinder, delay and defraud the existing creditors of said Christian and Porter Aluminum Company, or some of them.

As indicated above, the act of bankruptcy here in question concerned the transfer of money from Nick Christian to Knowles, an attorney who represented De-Wayne Titus and Harbor Steel, Inc.

Christian and Porter argues that such amendment was improperly allowed in that (1) it alleged facts entirely outside the scope of the original creditors' petition (all the initially alleged acts of bankruptcy having stemmed from a single set of circumstances) and hence (2) prejudiced the position of the then-alleged bankrupt since the timing of the amendment (on the last day of trial) precluded the alleged bankrupt from defending the issue. Moreover, Christian and Porter argues that if the amendment be deemed to add a new and different alleged act of bankruptcy to the original creditors' petition, it could not relate back to the filing date of said petition. Accordingly, this amendment must fail since it alleged events occurring some seven and one-half months before, and the rule is that an amendment alleging an act of bankruptcy different from those claimed in the original petition must be made within four months of the acts alleged.

It is true that an amendment adding a new act of bankruptcy, even if con-

forming to proof, will not relate back to the filing date of the original petition in order to be applicable to acts occurring more than four months previous to such amendment. In re Inland Discount Corporation, 247 F.Supp. 335, 338–339 (E.D. Mo.1965). *See also* In re Silver, 109 F. Supp. 200, 202 (E.D.Ill.1953), aff'd, 204 F.2d 259 (7th Cir. 1953); In re International Hatters Supply Co., 46 F.Supp. 909, 910 (S.D.N.Y.1942). This statement should not be confused with the erroneous suggestion of Christian and Porter that amendment should not be permitted at all in this context.

■ The short answer to the contention of Christian and Porter is that the Referee regarded the amendment as accurately reflecting the proof at trial and within the scope of the issues presented for adjudication by the original creditors' petition. Accordingly, the amendment would relate back to the filing date of the original creditors' petition since it served to clarify it. *See* Peterson v. Peterson, 400 F.2d 336, 339 (8th Cir. 1968); In re Magone Furniture Company, 227 F.Supp. 358, 359 (D.Ore.1964). Such amendments, particularly to conform to proof, should be liberally allowed within the spirit of Rule 15 of the Federal Rules of Civil Procedure. *See* In re Miller, 262 F.Supp. 298, 299 (E.D.Ill.1967); In re Leach, 197 F.Supp. 32, 37 (W.D. Ark.1960); In re Timberline Lodge, 139 F.Supp. 13, 17 (D.Ore.1955).

### Conclusion

The attorney for Christian and Porter has done an able and spirited job in presenting the bankrupt's petition for review to this court. However, for the reasons expressed above, it is the order of this court that the Referee's Order of Adjudication is hereby affirmed and the petition of the bankrupt for review is hereby denied.