### FOLSOM v. SEAPY et al.

### SEAPY et al. v. FOLSOM.

(Circuit Court of Appeals, Eighth Circuit. November 27, 1925.)

Nos. 6748, 6749.

**1. Fraudulent conveyances ⬤⟿95(2)—Wife's agreement to release homestead right in particular property held sufficient consideration for agreement to convey other property to her.**

Wife's agreement to join in deed of particular realty to release her homestead right therein, which she was otherwise unwilling to sell, held sufficient consideration for agreement by husband to subsequently convey to her other property.

**2. Fraudulent conveyances ⬤⟿57(4)—Executory contract to convey land, made by debtor while solvent, may be carried out after insolvency.**

Executory contract by debtor to convey real estate, made while debtor is solvent, may be lawfully carried out after he has become insolvent.

**3. Bankruptcy ⬤⟿176—Conveyance of realty by insolvent husband to his wife in performance of valid contract held not in fraud of creditors.**

Conveyance of realty by insolvent husband to his wife, in performance of valid contract made while husband was solvent, held not in fraud of creditors.

**4. Fraudulent conveyances ⬤⟿70—Conveyance of realty from husband to wife held not violative of Uniform Fraudulent Conveyance Act of South Dakota.**

Conveyance of realty from husband to wife, in consideration of wife's joinder in conveyance of other realty to third person, held not violative of Uniform Fraudulent Conveyance Act S. D. §§ 3, 5, 6, there being no evidence that husband was engaged or about to engage in a business for which the property remaining in his hands was an unreasonably small capital, or contemplated incurring debts beyond his ability to pay.

**5. Husband and wife ⬤⟿129(4)—Wife held not estopped by failure to record husband's agreement, to claim realty conveyed to her in consideration of her joinder in deed to other property.**

Under Rev. Code S. D. 1919, § 592, wife's failure to record husband's agreement for conveyance of particular land to her in consideration of her joinder in deed of other land to third person held not to estop her from claiming land so conveyed by her husband after insolvency as against his creditors; such statute not applying to creditors, and it not appearing that any creditor extended credit to husband on belief that he owned the land covered by the agreement.

**6. Bankruptcy ⬤⟿178(1)—Real estate transaction between husband, wife, and third person held to result in gift to wife during insolvency of husband, recoverable by trustee in bankruptcy.**

Under Rev. Code S. D. 1919, §§ 451, 458, 459, 466, 3345, relating to homestead and conveyances thereof, where husband owning quarter section of land and an adjoining 80 acres, all subject to a $12,000 mortgage, in consideration of wife's agreement to join in sale of the 80 acres, agreed to convey remaining quarter to her, subject to mortgage, but in making conveyance of the 80 acres at time when he was insolvent required purchaser to assume over $7,000 of the mortgage, held, such requirement amounted to gift of that amount to his wife, which, being made during insolvency of husband, was recoverable by trustee in bankruptcy of husband after allowance to wife of homestead exemption of $5,000.

Appeal from the District Court of the United States for the District of South Dakota; James D. Elliott, Judge.

Action by N. J. Folsom, as trustee in bankruptcy of Irving W. Seapy, against Jessie E. Seapy and Irving W. Seapy. From a judgment and decree granting partial relief, all parties appeal. Affirmed.

Joe Kirby, of Sioux Falls, S. D. (Kirby, Kirby & Kirby, of Sioux Falls, S. D., R. H. Burton-Smith, of Sioux City, Iowa, and S. K. Grigsby, of Sioux Falls, S. D., on the brief), for plaintiff.

Charles V. Caldwell, of Sioux Falls, S. D. (Clarence C. Caldwell, of Sioux Falls, S. D., on the brief), for defendants.

Before STONE and KENYON, Circuit Judges, and PHILLIPS, District Judge.

PHILLIPS, District Judge. This is an action to cancel a deed of conveyance from Irving W. Seapy to Jessie E. Seapy, his wife.

On the 9th of August, 1919, Irving W. Seapy owned 240 acres of farming land particularly described as follows: The N. E. ¼ and the N. ½ of the S. E. ¼ of section 27, township 98 north, range 49, Lincoln county, S. D. This land at that time was worth approximately $75,000. It was incumbered by a mortgage for $12,000. The house and other farm buildings were situated on the E. ½ of the N. E. ¼ of said section 27, and were of the value of $10,000. On August 9, 1919, Irving W. Seapy was indebted in addition to the incumbrance on his land in the amount of $24,650, and owned personal property of the value of $19,000, and an equity in a tract of land in Texas, on which he had paid $6,500.

In the year 1919, Irving W. Seapy was desirous of selling the above described land. Mrs. Seapy objected, and a controversy arose between them. As a result, the following contract was entered into:

"This agreement, made this 9th day of August, 1919, by and between I. W. Seapy, party of the first part, and Jessie E. Seapy, his wife, party of the second part, witnesseth:

"That the said parties hereto are husband and wife, and reside upon and occupy the northeast quarter and the north half of the southeast quarter of section twenty-seven (27), township ninety-eight (98) north, of range forty-nine (49), Lincoln County, South Dakota, as a home.

"The said party of the first part, thinking that it would be to their best interests to sell the south 80 acres of above land (being the N. ½ S. E. ¼ of section 27), but the second party not agreeing with him, and refusing to sign any deed to convey said tract, it is hereby mutually agreed and understood that a compromise agreement be entered into as follows:

"The party of the second part agrees that she will permit the sale of the above-described eighty-acre tract, and agrees to sign a deed for the conveyance thereof, in consideration of the conveyance to her, the said second party, the full and complete title to

the northeast quarter of said section 27—98—49, subject to the existing incumbrance thereon, being a mortgage for $12,000 to Hollister Bros.

"In witness whereof the said parties have hereunto set their hands the day and year last above written.      I. W. Seapy,

"Jessie E. Seapy.

"Witnesses:

"A. Helgerson,

"L. E. Knowlton."

This contract was not recorded. The facts leading up to and surrounding its making were testified to by one Helgerson as follows:

"That in 1919 he was acquainted with Mr. and Mrs. Seapy and engaged in the abstract and real estate business and that he prepared Exhibit A. (The contract of August 9, 1919.) Q. How did you come to prepare that? * * * A. That contract was drawn up after having listed or asked the listing of this land of Mr. Seapy's for sale. Mr. Seapy told me that Mrs. Seapy would not consent to any sale; that, in case I got a chance to sell it, it would be only on condition that Mrs. Seapy would have absolute title to the home place, or the quarter where they were living. So, in contemplation of this proposed sale—in fact, I had a buyer in view—I drew this contract, and after conferring with them, Mrs. Seapy, I drew this contract, and asked if she would then be willing to sign an assignment. She said, 'Absolutely,' on condition that she would have title to the home place. By the home place I refer to the quarter where she lives. * * * I was present when the contract between Mr. and Mrs. Seapy was signed. It was signed on the day of its date, the 9th day of August, 1919, out at the farm. The only persons present were Mr. Knowlton and Mr. and Mrs. Seapy. I did not hear anything said about creditors' claims, or anything like that, between Mr. and Mrs. Seapy."

In September, 1919, Irving W. Seapy entered into a contract with Ole Steensland for the sale of the N. ½ of the S. E. ¼ of said section 27, and on March 1, 1920, Irving W. Seapy and Jessie E. Seapy executed and delivered their deed therefor to Steensland. As a part of the consideration it was covenanted and agreed in the deed that Steensland should assume and pay $7,128.71 of the $12,000 mortgage. In addition thereto, Steensland paid to Irving W. Seapy in cash and Liberty bonds $17,871.29. The 80-acre tract sold to Steensland was worth $25,-

000. On March 17, 1920, Irving W. Seapy executed and delivered to Jessie E. Seapy a deed for the N. E. ¼ of said section 27.

Subsequent to August 9, 1919, and prior to March 17, 1920, Irving W. Seapy engaged in an orgy of speculation. At the latter date, after applying on his debts the cash and Liberty bonds received from the sale of the 80-acre tract to Steensland, Seapy was indebted in the amount of $100,-000, evidenced by unsecured notes, and owned personal property of the approximate value of $12,000. Thereafter Irving W. Seapy was adjudged a bankrupt. This action was brought by N. J. Folsom, as trustee in bankruptcy of Irving W. Seapy, to set aside the deed of March 17, 1920. The cause came on for trial below on November 27, 1923. At that time, claims against the estate of the bankrupt had been allowed in an aggregate amount of $23,546, based upon indebtedness created subsequent to August 9, 1919.

The court below found that the deed of conveyance from Irving W. Seapy to Mrs. Seapy was made in compliance with the contract of August 9, 1919, and that such contract was based upon a good consideration, and was made and entered into in good faith, and without intent to defraud creditors. The court found, however, that the provision in the deed from the Seapys to Steensland, providing that Steensland should assume and pay $7,128.71 of the $12,000 mortgage, was made at a time when Irving W. Seapy was insolvent, and was without any consideration from Mrs. Seapy, and amounted to a voluntary transfer to her of a contractual right of the value of $7,128.71. The court entered a decree accordingly by which it adjudged and decreed that Jessie E. Seapy was the owner in fee simple of the N. E. ¼ of said section 27; that Jessie E. Seapy and Irving W. Seapy had a homestead right, as against the claims of creditors therein, to the extent of $5,000; that Irving W. Seapy had an interest in said tract of land to the extent of $7,128.71, which had passed to Folsom, as trustee in bankruptcy; that Jessie E. Seapy should pay to Folsom, as trustee in bankruptcy, on or before October 1, 1928, the sum of $7,-128.71, with 7 per cent. interest from the date of judgment to the date of payment, and in default of such payment that the real estate should be sold, and the proceeds disbursed as follows: First, $5,000 to Jessie E. Seapy; second, out of the balance remaining, $7,128.71, with interest, to Folsom as trustee in bankruptcy; and, third, the balance, if any remaining, to Jessie E. Seapy. From this judgment and decree, Folsom, as trustee in bankruptcy, hereinafter called plaintiff, and Irving W. Seapy and Jessie E. Seapy, hereinafter called defendants, have appealed.

It is insisted by the plaintiff that the contract of August 9, 1919, was without consideration and nonenforceable, and therefore that the deed of March 17, 1920, was a voluntary conveyance, made at a time when Irving W. Seapy was hopelessly insolvent. On the other hand, it is insisted by the defendants that said contract was based upon a good and valuable consideration; that it was made in good faith, at a time when Irving W. Seapy was solvent, and therefore that the deed made in pursuance to such contract related back to the date of the contract and was not fraudulent as to creditors.

At the time of the transaction in question, the statutes of South Dakota contained the following provisions with reference to homestead:

"It [the homestead] may contain one or more lots or tracts of land with the buildings thereon and other appurtenances, subject to the limitations contained in the next section. * * *" Section 458, Rev. Code, S. D. 1919 (section 3223, Political Code).

"If within a town plat it must not exceed one acre in extent, and if not within a town plat it must not embrace in the aggregate more than 160 acres. * * *" Section 459, Rev. Code S. D. 1919 (section 3224, Political Code).

"Upon the death of either husband or wife, the survivor may continue to possess and occupy the whole homestead until it is otherwise disposed of according to law." Section 466, Rev. Code S. D. 1919 (section 3231, Political Code).

"Upon the death of any husband or wife or head of a family, having selected or being entitled to select a homestead as provided by law, the survivor or survivors of such homestead claimant, entitled thereto under the provisions of law, may continue to have exclusive possession of the homestead as defined by law until it is otherwise disposed of, and have the rents and profits thereof as a whole or in shares according to law and as it may be dealt with by law. * * *" Section 3345, Rev. Code S. D. 1919 (section 153, Probate Code).

"The homestead of every family resident in this state, as hereinafter defined, to the extent of $5,000 in value, whether such homestead be owned by the husband or wife,

so long as it continues to possess the character of a homestead, shall be exempt from judicial sale, from judgment lien, and from all mesne or final process from any court." Section 3215, Comp. Laws S. D. 1913 (section 3215, Political Code).

"A conveyance or incumbrance of the homestead by the owner, if married, and both husband and wife are residents of this state, shall be valid, if both concur in and sign or execute such conveyance or incumbrance, whether the same be by joint instrument or separate instruments." Section 451, Rev. Code S. D. 1919.

Construing these provisions, the Supreme Court of South Dakota, in Hansen v. Hansen, 40 S. D. 114, 166 N. W. 427, said:

" * * * Where the owner of a homestead is free from debts, his homestead, if outside a city or town, may consist of 160 acres of land, with the improvements thereon, free from all limitation as to value, and upon his death such homestead descends to his widow and heirs, as provided in section 3232, Political Code, without any limitation as to value; but where the owner of such homestead is in debt, then such homestead, to the extent that it exceeds $5,000 in value, is subject to the payment of the owner's debts. In case of his death, such homestead descends to his widow and heirs as provided by section 3232, Political Code. But they acquire no greater right therein than the decedent himself had, and take such homestead subject to the payment of his debts, as provided by subdivision 7, section 345, Code of Civil Procedure, to the extent that such homestead exceeds $5,000 in value. * * *

"Where no homestead has been selected, the county court may cause one to be selected. Such homestead may consist of 160 acres, without limitation as to value, provided the indebtedness is all paid; but if there is not sufficient money or property on hand to pay the indebtedness without resorting to the homestead, then the portion of the homestead in excess of $5,000 in value may be sold under the order of the county court and the proceeds applied on the indebtedness of the estate. * * * If the tract of land occupied by the decedent as a home exceeds 160 acres in area, then it must be divided; 160 acres thereof shall be set apart for the widow and children as provided by section 153, Probate Code, and the remainder turned over to the heirs; and, if there are unpaid debts remaining, then such portion of the 160-acre homestead as exceeds $5,000 in value may be

applied in payment of such indebtedness. * * * If the homestead is incumbered, and the assets of the estate, exclusive of the homestead, are not sufficient to pay such incumbrance, then the county court may cause such homestead to be sold. The incumbrance shall be paid from the proceeds of such sale, and any surplus that may be left after paying such incumbrance shall be turned over to the widow and children."

[1] At the time of the contract of August 9, 1919, the N. ½ of the S. E. ¼ and the E. ½ of the N. E. ¼ of said section 27, could have been selected as a homestead. At that time, the other property of Irving W. Seapy was amply sufficient to pay his debts. Upon the death of Irving W. Seapy, Jessie E. Seapy would have had the right to occupy such homestead during the remainder of her natural life. Her agreement to release the homestead right in the N. ½ of the S. E. ¼ of said section 27 by joining in the deed of conveyance was a good and valuable consideration, and was sufficient to support the agreement on the part of Irving W. Seapy to convey to her the N. E. ¼ of said section 27. 27 C. J. 559, § 262. People's Bank of Red Level v. Barrow & Wiggins, 208 Ala. 433, 94 So. 600, 602, 603, 604; Sykes v. Chadwick (18 Wall.) 85 U. S. 141, 21 L. Ed. 824.

Plaintiff contends that Mrs. Seapy had no homestead right in the N. ½ of the S. E. ¼ of said section 27, and that her signature was not necessary to a valid deed of conveyance thereof. Were this conceded, it would avail plaintiff nothing. It is clear that Irving W. Seapy believed he could not sell and convey the land without Mrs. Seapy joining in the deed. It is fair to assume that a purchaser would not have accepted a conveyance without Mrs. Seapy joining therein. Her agreement to execute the deed under the circumstances, was a good consideration for the contract of August 9, 1919.

In Sykes v. Chadwick, supra, the court said:

"At all events, the defendant when he was endeavoring to negotiate the sale of his property deemed it of sufficient importance to give the note in question in consideration of the plaintiff joining in the deed, and releasing any contingent right she might have. This very act of hers may have been necessary, and we have a right to infer that it was deemed important, to the closing up of the transaction and securing the sale of the property. If any release is deemed requisite to confirm the title of lands with which one has been connected, though by a proper con-

struction of the law he has no interest in them whatever, still such release will be a good consideration for a promise or for the payment of money."

[2, 3] An executory contract by a debtor to convey real estate made while the debtor is solvent may be lawfully carried out after the debtor has become insolvent. 27 C. J. 502, § 167. Holmes v. Winchester, 133 Mass. 140; Paulding, as Trustee, etc., v. Chrome Steel Co. et al., 94 N. Y. 334, 340. Therefore the execution and delivery by Irving W. Seapy to Jessie E. Seapy of the deed of March 17, 1920, although Seapy was then insolvent, was not a conveyance in fraud of creditors, because it was made in performance of a valid contract, based upon a good consideration, and entered into at a time when Irving W. Seapy was solvent.

[4] Plaintiff further contends that the conveyance in question violated the uniform fraudulent conveyance act of South Dakota. Chapter 209, Laws S. D. 1919. Sections 3, 5, and 6 of this act read as follows:

"Sec. 3. *Fair Consideration.* Fair consideration is given for property, or obligation: (a) When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied; or (b) when such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained."

"Sec. 5. *Conveyances by Persons in Business.* Every conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction without regard to his actual intent.

"Sec. 6. *Conveyances by Persons About to Incur Debts.* Every conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors."

The facts as disclosed by the record do not support this contention. After Irving W. Seapy had contracted for the sale on August 9, 1919, of the N. E. ¼ of said sec-

tion 27, he was neither engaged nor about to engage in a business or transaction for which the property remaining in his hands was an unreasonably small capital. Neither do the facts justify the conclusion that Irving W. Seapy at the time of the making of the contract of August 9, 1919, intended or believed that he would incur debts beyond his ability to pay them as they matured. The facts rather indicate the contrary and the trial court so found.

[5] The plaintiff further contends that Mrs. Seapy is estopped to claim title against the creditors who hold claims against the bankrupt estate because the contract of August 9, 1919, was not recorded. The recording statute of South Dakota (section 592, Rev. Code 1919) reads as follows:

"Every conveyance of real property, other than a lease for a term not exceeding one year, is void as against any subsequent purchaser or incumbrancer, including an assignee of a mortgage, lease, or other conditional estate, of the same property, or any part thereof, in good faith and for a valuable consideration, whose conveyance is first duly recorded."

The provisions of this section do not apply to creditors. Roblin v. Palmer, 9 S. D. 36, 67 N. W. 949; Murphy v. Plankinton Bank, 13 S. D. 501, 83 N. W. 575; Kohn v. Lapham, 13 S. D. 78, 82 N. W. 408.

There was no showing that any of the creditors represented by the plaintiff extended credit to Irving W. Seapy upon the belief that he owned the land included in the deed sought to be set aside. No element of estoppel is disclosed by the record. Smith v. Cleaver, 25 S. D. 351, 126 N. W. 589.

[6] Defendants complain of that portion of the decree which requires Jessie E. Seapy to pay to the plaintiff the sum of $7,128.71, with interest. In the contract of August 9, 1919, Mrs. Seapy assumed the mortgage of $12,000. The terms of this contract did not require Irving W. Seapy, in selling the land, to provide that the purchaser would assume and agree to pay any portion of this mortgage. The provision in the deed to Steensland, requiring the latter to pay $7,128.71, was tantamount to a gift to Mrs. Seapy of that amount, made at a time when Seapy was hopelessly insolvent. We believe the facts fully warrant the conclusion that the contractual right written into the deed to Steensland in favor of Mrs. Seapy was of the value of $7,128.71. The provisions of the decree requiring Mrs. Seapy to pay to the plaintiff

this amount, with interest, was just and proper.

We find no error in the record, and the decree is therefore affirmed.