In the Matter of Everette Marshall, Alleged Bankrupt.

Everette MARSHALL, Petitioner,

v.

Earl SHOWALTER, Jr., d/b/a Showalter Custom Service, Valley Concrete Company, and W. F. Woodside, d/b/a Woodside Seed Growers, Respondents.

No. 39741.

United States District Court
D. Colorado.

Sept. 16, 1965.

Haskell, Helmick, Carpenter & Evans, Forrest E. Cook, Denver, Colo., for Everette Marshall.

David A. Gushurst, La Junta, Colo., for Earl Showalter, Jr., d/b/a Showalter Custom Service.

Rexford L. Mitchell, Rocky Ford, Colo., for Valley Concrete Co. and W. F. Woodside d/b/a Woodside Seed Growers.

WILLIAM E. DOYLE, District Judge.

The petitioner herein was adjudged a bankrupt by the Referee in an involuntary proceeding and the matter is before this Court for review. The Referee has certified two questions. They are:

1. Was the transfer or assignment by Petitioner to his wife of his undivided one-half interest in a promissory purchase money note fraudulent, and made to hinder and delay his creditors, thus constituting an act of bankruptcy?

2. Was petitioner in fact solvent at a period four months prior to September 4, 1964, and since?

Everette and Harriet Marshall, husband and wife, were, prior to the incidents in question, owners of a ranch near La Junta, Colorado. This ranch was sold in 1963 to a group of individuals who incorporated as the Marshall Land and Cattle Company. Part of the consideration for the sale was a note payable to the Marshalls and their son Robert, in the amount of $300,000.00. There was also an agreement whereby the purchasers assumed the personal obligations of Everette Marshall as they existed prior to July 5, 1963. These were in the approximate amount of $157,500.00. There is no evidence that Marshall was released by the various creditors and so it must be assumed that he continued liable to them on the personal debts.

On July 15, 1963, Robert, the son, transferred his one-third interest in the note to his parents. On June 1, 1964, Marshall transferred his undivided one-half interest in the note to his wife Harriet. At that time the balance was $285,000.00, there having been a payment of $15,000.00. It is contended by the petitioning creditors, respondents here, that this second assignment constituted the first act of bankruptcy under Section 3, sub. a(1) of the Bankruptcy Act, Title 11 U.S.C.A. § 21, sub. (a) (1).

On June 1, 1964, Marshall's liabilities were approximately $157,500.00 plus additional liability to the Brighton National Bank in the amount of $15,000.00 secured by a mortgage on a tractor. His assets consisted of a $14,000.00 claim for personal expenses against the Marshall Land and Cattle Company, a claim for unpaid salary against the company, a life interest subject to a second mortgage on his home, some small insurance policies, the equitable value of the tractor, and the equity, if any, in the note which he assigned to his wife.

There was little testimony as to the value of the note in question. There was evidence as to the property owned by the Marshall Land and Cattle Company, and the evidence also showed that personal judgment had been obtained, but not collected, against two of the six individual obligors on the note. The referee took into account some other evidence relative

to the value of this note. This information was apparently derived from documents on file in the corporate bankruptcy case.

It is to be noted that the petitioning creditors originally alleged that an act of bankruptcy was committed by Marshall on June 1, 1964, by a transfer "in fraud of his creditors." In an amended petition the creditors alleged that "while unable to pay his debts" Marshall made a transfer "with intent to hinder, delay or defraud his creditors, or some of them."

In our view the original petition alleged the commission of the first act of bankruptcy within the definition contained in Section 3a(1) (1) of the Act, which reads as follows:

> "Acts of bankruptcy by a person shall consist of his having (1) concealed, removed, or permitted to be concealed or removed any part of his property, with intent to hinder, delay, or defraud his creditors or any of them, *or made or suffered a transfer of any of his property, fraudulent under the provisions of section 67 or 70 of this Act; * * *."*
> (Emphasis supplied.)

The above section furnishes two tests for the first act of bankruptcy; namely, concealment of property with intent to hinder, delay or defraud creditors; or, secondly, a transfer which is fraudulent within the meaning of section 67 or 70 of the Act.

Section 67, sub. d (2) (a) provides in pertinent part:

> "Every transfer made and every obligation incurred by a debtor within one year prior to the filing of a petition initiating a proceeding under this Act by or against him is fraudulent (a) as to creditors existing at the time of such transfer or obligation, if made or incurred without fair consideration by a debtor who is or will be thereby rendered insolvent, without regard to his actual intent."

■ Thus, a transfer, fraudulent under Section 67, requires proof of insolvency. This term is defined in Section 67, sub. d(1) (d) as follows: "[A] person is 'insolvent' when the present fair salable value of his property is less than the amount required to pay his debts; * * *." As we view it, the main concern here is with the question whether there was a transfer, fraudulent under the provisions of Section 67, rather than whether there was a concealment or removal with intent to hinder, delay or defraud creditors. Although the referee's submitted questions do not specifically set out this question, they are broad enough to encompass it.

■■ Marshall argues that the creditors are bound by the amended pleading in that Section 67 can not come into play because of this. He maintains that the creditors must prove actual intent. However, we disagree with this and are of the opinion that the clause of Section 3, sub. a (1) was intended to liberalize the requirements for proving the first act of bankruptcy in that intent to defraud no longer remained a necessary element. See Collier on Bankruptcy, 14th ed., ¶¶3.101[2] and 3.101[3]. Here the original petition embraced the second clause of Section 3, sub. a(1) and thus the creditor should not be precluded from invoking it. Furthermore, there was no objection at the hearing to testimony which pursued this theory. Thus, under Rule 15(b) of the Federal Rules of Civil Procedure and General Order 37, the referee had discretion to permit the petition to be amended to conform with the evidence. See Cameron v. Federal Auto Parts, Inc., 5 Cir., 1962, 301 F.2d 867; Moore, Federal Practice, 2nd edition, § 15.13[2]. It was thus open to the referee under the circumstances to conclude that a fraudulent transfer under Section 67, sub. d (2) (a) occurred on June 1, 1964, and that Marshall had committed an act of bankruptcy under Section 3, sub a (1).

The creditors take the position that the transfer of Marshall's one-half interest in the note on June 6, 1964, rendered him insolvent within the terms of Section 67, sub. d(2) (a). This section requires that

there be a transfer, a lack of a fair consideration, and insolvency.

■■ As to the element of lack of fair consideration, the referee's finding that the sum of One Dollar was less than a fair consideration, is valid. We need not comment further on this. The more important question is that of Marshall's insolvency within the terms of Section 67. The language to be noted is that of Section 67, sub. d(2) (a), which provides, in relation to the transfer, "who is or *will be* thereby rendered insolvent" (emphasis supplied) without regard to his actual intent. Marshall urges that these words require proof of insolvency at the date of transfer and indeed the referee assumed that this was the proper construction to be given to the statute. Collier, ¶3.109 [2] has a comment which appears at first somewhat ambiguous and from which Marshall raises a question as to whether insolvency must have existed at the date of transfer. However, the wording of Section 67, sub. d(2) (a) does not point to such a construction. That section permits a finding of insolvency before or as a result of an alleged transfer. Collier, in ¶67.32 and ¶67.34 [3], supports this view of the statute:

"The conditions existing at or immediately after the time of the transfer by the debtor are to be canvassed in determining whether he was insolvent or thereby rendered insolvent for the purposes of subdivision d." Collier, supra, ¶67.32.

"If the two conditions are present, *viz.*, lack of fair consideration and insolvency or resulting insolvency, there is a conclusive presumption of fraud, * * *." Collier, supra, ¶67.34 [3].

Moreover, the purpose of the statute to protect creditors could not be served by such a narrow reading. The only sensible meaning to be given to it is that it was intended to apply both before the transfer and after, otherwise the words which contemplate that the bankrupt was rendered insolvent by the transfer would be meaningless. Therefore, the crucial issue is whether Marshall was *rendered* insolvent by the assignment of the note. We must conclude that under the Section 67 definition of insolvency the transfer rendered Marshall insolvent. It would be palpably illogical to allow him to include the value of the note after the transfer on the asset side of the ledger for the purpose of determining whether he was rendered insolvent by the transfer.

■■ It is also argued by Marshall that he retained an equitable interest in the assigned note and for this reason it should be considered and the case should be remanded for the purpose of determining its value. However, there is no basis in the record for so concluding. The evidence does not establish that the transferred interest was held in trust for Marshall. It may well be that Mrs. Marshall would have made the proceeds available to Marshall at some future time. However, there was not a contemporaneous agreement that would require her to do so. The transfer was unrestricted and under the law of Colorado a wife is not under a duty, legal or equitable, to apply her funds to her husband's debts.

■ On the basis of the foregoing, it is concluded, therefore, that on June 1, 1964, Marshall did perform an act of bankruptcy under Sections 3, sub. a(1) and 67 of the Bankruptcy Act by transferring to his wife a one-half interest in a note having a total face value of $285,000.00, without fair consideration, thereby rendering himself insolvent within the meaning of Section 67 of the Act. Under the mentioned sections it was not necessary to establish an actual intent to defraud creditors and we do not find that there existed such an intent. The act of bankruptcy is complete when there is a transfer later incurred without fair consideration by a debtor who is or will be thereby rendered insolvent without regard to his actual intent.

The referee's holding is affirmed.