In the Matter of **INLAND SECURITY COMPANY, INC., William C. Paxton,** **Trustee, Plaintiff,**

v.

**ESTATE of George KIRSHNER,** **Defendant.**

**No. 43626.**

United States District Court, W. D. Missouri, W. D.

Sept. 9, 1974.

William C. Paxton, Trustee, Independence, Mo., for plaintiff.

Ben R. Swank, Jr., Kansas City, Mo., for defendant.

FINAL JUDGMENT AFFIRMING ORDER OF THE REFEREE IN BANKRUPTCY OF NOVEMBER 19, 1973, FINDING THE TRANSFER OF A CERTAIN PROMISSORY NOTE ON FEBRUARY 28, 1971, TO BE FRAUDULENT AND VOID AS AGAINST THE PLAINTIFF AND DIRECTING THAT THE NOTE AND DEED OF TRUST BE TURNED OVER TO THE PLAINTIFF

WILLIAM H. BECKER, Chief Judge.

This cause comes before this Court on the defendant's notice of appeal, filed herein on December 19, 1973, pursuant to Bankruptcy Rule 801. In this appeal, defendant seeks to secure review and reversal of the order of the Referee in Bankruptcy entered on November 19, 1973. In that order the Referee concluded that the transfer of a certain promissory note secured by a deed of trust encumbering property located at 2645 Brooklyn, Kansas City, Missouri, of the Christian Pentecostal Church Association, was fraudulent and void under Section 67d(2)(a) of the Bankruptcy Act. In that order the Referee directed that the defendant turn over the promis-

sory note and the deed of trust, together with any and all collections received therefrom since February 28, 1971, to the Trustee, plaintiff herein.

In order to clarify the issues for consideration herein, a brief chronological summary of the facts of record follows.

The bankrupt, Inland Security Company, was a Missouri corporation which engaged in managing its own properties and servicing secured promissory notes owned by others, generally referred to by Inland Security Company as "clients." George F. Kirshner, who for many years was the President, Director and controlling stockholder of Inland Security Company, was also generally referred to as one of Inland Security Company's "clients." In the servicing of its clients' notes, Inland Security received monies paid by clients' obligors and at monthly periods would send such accumulated monies to the respective clients, acting as an agent.

The general practice of Inland Security with respect to its "client" and managing officer George F. Kirshner differed. Monies collected for Mr. Kirshner were not paid over directly to him individually but were credited to him and placed in Inland Security's general operating account and were used by Inland Security for its own purposes and that of its clients. Under this practice, Mr. Kirshner's unsecured open account was credited upon the receipt by Inland Security of such monies owing to Mr. Kirshner. The increase in Mr. Kirshner's account generally equalled the amount of this money either retained or received on his account.

Over the years, Inland Security accrued a substantial unsecured account payable to Mr. Kirshner. On February 28, 1971, four months before Mr. Kirshner's death and seven months and nineteen days before the petition in bankruptcy was filed, there was owing to Mr. Kirshner as creditor the unsecured sum of $104,597.33 on open account. This sum represented the sums of money advanced by Mr. Kirshner over a number of years while he was Presi-

dent, Director, managing officer, and controlling stockholder of Inland Security Company. In February of 1971, Mr. Kirshner transferred the proceeds of a loan from the Linwood State Bank to Inland Security Company in the amount of approximately $20,000.

On February 28, 1971, Mr. Kirshner, as President of Inland Security, endorsed and transferred to himself as an individual a secured promissory note given by the Christian Penecostal Church Association ("Church" hereinafter) on October 1, 1969, in the original sum of $13,000, on which there remained unpaid the sum of $12,354.97, which was credited against Mr. Kirshner's unsecured open account, leaving a balance due him on his account with Inland Security in the amount of $92,242.36. This promissory note which Mr. Kirshner transferred to himself was secured by a first deed of trust on real property and improvements located at 2645 Brooklyn, Kansas City, Missouri. At the same time, Mr. Kirshner caused the balance of the open cash account due him from Inland Security to be reduced by the same amount of the principal balance then owing on this note, which was $12,354.97.

Mr. Kirshner died on July 2, 1971, holding as his individual property at his death the promissory note of the Church secured by the deed of trust of the property located at 2645 Brooklyn, Kansas City, Missouri.

On October 19, 1971, Inland Security Company filed a petition for bankruptcy, and on that same date it was adjudged a bankrupt. The first meeting of creditors was held on November 22, 1971, and William C. Paxton, Esquire, was elected, thereafter qualified and is now serving as trustee of the estate of the bankrupt.

On May 12, 1972, the estate of George F. Kirshner filed a petition for relief in the Bankruptcy Court, therein advising the Court of the sale and transfer of a certain promissory note secured by a deed of trust on property located at 2645 Brooklyn, Kansas City, Missouri. The

Court was further advised that the obligor Church was confused as to whom payments should be made to and requested the Court to direct the Trustee to disclaim any interest therein. Following the holding of a hearing on that petition, the Referee entered an order on June 12, 1972, therein finding that a controversy existed as to the ownership of the note and directing that, until the Bankruptcy Court entered its findings upon the merits of the issue of ownership of the note, the makers thereof were to pay the delinquent installments and all future payments on the note as the same became due to Ben R. Swank, Jr. In the order it was further directed that these payments be deposited in an escrow savings account in the City National Bank & Trust Company in the name of Ben R. Swank, Jr., counsel for defendant, and William Paxton, Trustee. Pursuant to this order the account was opened and payments were deposited as directed.

Thereafter, on July 25, 1972, the Trustee filed a petition seeking to set aside the sale and transfer of the secured note of the Church to Mr. Kirshner, alleging it to be fraudulent and requesting the Bankruptcy court to order a "turn over" of the note to the bankrupt and an accounting of the proceeds collected thereon. A pretrial conference was held by the Referee on November 17, 1972, at which time the contentions of the parties were further presented and argued. The Referee requested that written briefs on the matter be submitted to him.

After consideration of the record, the briefs and stipulations of the parties, the Referee entered his memorandum opinion and order on November 19, 1973, finding therein that "there was not fair consideration"; that the receipt of "a secured note is [not] the fair equivalent of an unsecured indebtedness"; and that " . . . there was a breach [by Kirshner] of the fiduciary relationship between Kirshner and the bankrupt." Based on these findings, the Referee concluded that " . . . the transfer by the defendant on February 28, 1971 of a certain promissory note in [the] sum of $12,354.97 secured by a deed of trust encumbering 2645 Brooklyn, Kansas City, Missouri and made by the Christian Penecostal Church Association is fraudulent and void as against the plaintiff under § 67d(2)(a) of the Bankruptcy Act and is hereby held to be null and void." In that same order, the Referee directed that the " . . . defendant turn over said note and deed of trust together with any and all collections received therefrom since February 28, 1971 to plaintiff." This appeal of that order by the estate of Mr. Kirshner to this Court followed.

Section 67d(2)(a) of the Bankruptcy Act provides as follows:

"Every transfer made and every obligation incurred by a debtor within one year prior to the filing of a petition initiating a proceeding under this Act by or against him is fraudulent (a) as to creditors existing at the time of such transfer or obligation, if made or incurred without fair consideration by a debtor who is or will be thereby rendered insolvent, without regard to his actual intent. . . ."

To come within the scope of Section 67d(2)(a), a transfer must be: (1) within one year prior to the filing of a petition initiating a proceeding under the Bankruptcy Act; (2) there must be existing creditors at the time of the transfer; (3) the transfer must be made at a time the debtor is insolvent or will thereby be rendered insolvent; and (4) the transfer must be made or incurred without fair consideration. *See*, Bullard v. Aluminum Company of America, 468 F.2d 11, 13 (7th Cir. 1972).

In his order of November 19, 1973, the Referee in Bankruptcy found and concluded that all four of the above-noted criteria had been met with respect to the transfer of February 28, 1971. In reviewing the Referee's order of November 19, 1973, and the correctness of that decision in respect to the application of the four noted criteria for establishing a fraudulent transfer under Section 67d

(2)(a) of the Bankruptcy Act, this Court must be guided by Bankruptcy Rule 810, which provides as follows:

"Upon an appeal the district court may affirm, modify, or reverse a referee's judgment or order, or remand with instructions for further proceedings. The court shall *accept the referee's findings of fact unless they are clearly erroneous*, and shall give due regard to the opportunity of the referee to judge of the credibility of the witnesses." *See also*, Advisory Committee's Note on Bankruptcy Rule 810. (Emphasis added.)

The Referee's findings of fact will be accepted by this Court unless the same are shown to be "clearly erroneous." A finding is clearly erroneous if ". . . the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746, 766 (1948); *accord*, In re Rohar Associates, 375 F. Supp. 637, 639 (S.D.N.Y.1974); *see also*, Securities and Exchange Commission v. S. J. Salmon & Co., Inc., 375 F. Supp. 867, 869 (S.D.N.Y.1974).

Having thoroughly and carefully reviewed the record presented to this Court, it is concluded that the findings of fact of the Referee are supported by the evidence, including stipulations, and are not erroneous or clearly erroneous. It is further found that the Referee's conclusions of law are correct, and that the record supports the determination that all four criteria for establishing a fraudulent transfer under Section 67d(2)(a) of the Bankruptcy Act have been met. The reasons in support of this affirmance of the Referee's order of November 19, 1973, will be set forth hereinafter.

First, the transfer of February 28, 1971, occurred within one year of the filing of bankrupt's petition for bankruptcy, which was filed on October 19, 1971. This criteria has also been stipulated to by the parties.

Second, there were creditors in existence at the time of the transfer on February 28, 1971. This criteria is amply established by the evidence presented, and it is further properly admitted by the defendant in his brief, filed herein on February 5, 1974.

Third, the debtor-bankrupt was insolvent, or was thereby rendered insolvent, at the time of the transfer on February 28, 1971. The Referee's finding on this issue is not clearly erroneous, and the record amply supports that finding.

■ Section 67d(1)(d) states that, for purposes of subdivision d, "a person is 'insolvent' when the present fair salable value of his property is less than the amount required to pay. his debts. . . . ." The term "present fair salable value" found in Section 67d(1)(d) is similar to the term "fair valuation" found in Section 1(19) of the Bankruptcy Act. *See*, Rudin v. Steinbugler, 103 F.2d 323 (2d Cir. 1939); 4 Collier, Bankruptcy, ¶ 67.32, p. 498 (14th ed. 1972). Because of the exclusion of exempt property from the term "property" as set forth in Section 67d(1)(a), and the expanded definition of the term "debt" as delineated in Section 67d(1)(b), the term "insolvency," for purposes of Section 67d, is quite different from the term "insolvency" as employed in Section 1(19) of the Bankruptcy Act. Thus, a person can be solvent for purposes of the Bankruptcy Act generally, yet be insolvent for purposes of Section 67d. See, 4 Collier, Bankruptcy, ¶¶ 67.32, 67.34, 67.39 (14th ed. 1972).

■■ Furthermore, in reviewing the question of insolvency, it is noted that ". . . Congress intended less stringent proof of insolvency in Section 107 [Section 67d of the Bankruptcy Act] than in other phases of bankruptcy proceedings." Holahan v. Lewis, 182 F. Supp. 473, 476–477 (N.D.Fla.1960); 4 Collier, Bankruptcy, ¶ 67.32, p. 499 fn. 6 (14th ed. 1972). Thus, insolvency need not necessarily be proven at the exact time of transfer, but rather the con-

ditions existing proximately before or immediately after the time of transfer by the debtor may be reviewed in determining whether the debtor was insolvent or thereby rendered insolvent for purposes of Section 67d of the Bankruptcy Act. Marshall v. Showalter, 245 F.Supp. 365, 368 (D.Colo.1965), affirmed, 375 F.2d 529 (10th Cir. 1967); 4 Collier, Bankruptcy, ¶ 67.32, pp. 500–501 (14th ed. 1972). In many instances, it is most difficult to prove insolvency on a given date prior to bankruptcy and the determination thereof may not always be susceptible of precise direct proof. Jones v. Rowland, 324 F.Supp. 494 (D.N.M. 1971), reversed, 457 F.2d 44, 46 (10th Cir. 1972); Haynes & Hubbard, Inc. v. Stewart, 387 F.2d 906, 907 fn. 1 (5th Cir. 1967); see also, 4 Collier, Bankruptcy, ¶ 67.32, p. 9 of the Supplement (14th ed. 1972).

■ A bankrupt's insolvency on a transfer date may be shown by using company books and other financial records, and by working backwards after the critical date, thereby proving ". . . other factors from which the ultimate fact of insolvency on transfer dates may be inferred or presumed." Haynes & Hubbard, Inc. v. Stewart, supra. This method (retroject) of determining insolvency is not novel and it has often been utilized in bankruptcy proceedings. See, e. g., Hassan v. Middlesex County National Bank, 333 F.2d 838, 840 (1st Cir. 1964), cert. denied, 379 U. S. 932, 85 S.Ct. 332, 13 L.Ed.2d 344 (1964); Inter-State National Bank of Kansas City v. Luther, 221 F.2d 382, 391 (10th Cir. 1955); Mutual Savings & Loan Association v. McCants, 183 F.2d 423, 425 (4th Cir. 1950); Rosenberg v. Semple, 257 F. 72 (3rd Cir. 1919); In re Great Western Biscuit Co., 85 F.Supp. 314 (S.D.Cal.1949); Braunstein v. Massachusetts Bank & Trust Co., 443 F.2d 1281, 1284 (1st Cir. 1971). "The only qualification to the use of this back-up method is that a trustee must be able to show absence of substantial or radical changes in assets or liabilities of the bankrupt between 'retrojection dates.' "

Haynes & Hubbard, Inc. v. Stewart, 387 F.2d 906, 907 fn. 1 (5th Cir. 1967); Hassan v. Middlesex County National Bank, 333 F.2d 838, 840–841 (1st Cir. 1964), cert. denied, 379 U.S. 932, 85 S. Ct. 332, 13 L.Ed.2d 344 (1964); Mc-Clung-Logan Equipment Co. v. Friedman, 195 F.2d 516, 517 (4th Cir. 1952).

The evidence adduced at the proceedings before the Referee reveals that during the bankrupt's corporate year ending June 30, 1971, it was sustaining losses of approximately $3,000.00 per month. For a six-year period prior to the filing of the petition in bankruptcy on October 19, 1971, the bankrupt was encountering losses of at least $11,000.00 each year. The balance sheet filed by the bankrupt for the year ending June 30, 1971 (four months after the transfer of the note and deed of trust) showed assets of $492,903.60, with stated assets over liabilities in the stated amount of $17,189.-59. Total assets scheduled in bankrupt's involuntary petition of October 19, 1971, were $179,244.43. Paul P. Cusack, a certified public accountant and business advisor for the bankrupt and George Kirshner, testified that the life insurance shown as an asset of $19,590.80, was not an asset. After adjusting the figures accordingly, there was an excess of liabilities over assets of at least $2,426.21, based on these adjusted figures without considering other factors reducing the stated value of the assets.

The bankrupt was insolvent on June 30, 1971. The bankrupt was insolvent on October 19, 1971, when its petition in bankruptcy was filed. The assets listed in bankrupt's June 30, 1971, balance sheet in the amount of $492,903.06 were valued by William Asjes, Senior Vice President of the Linwood State Bank, at fifty cents on the dollar.

Mr. Cusack testified that the bankrupt had owed him $1,000 for more than a year. He also testified that the bankrupt would not have sufficient liquid assets to pay $150,000.00 worth of claims on a liquidation sale in 1971. Mr. Asjes, the bankrupt's banker, testifed that in February of 1971, there was in-

sufficient real estate held by the bankrupt to secure an $80,000.00 obligation, without having the personal guarantee and security of other property owned by Mr. Kirshner individually. Furthermore, few of the properties listed by the bankrupt on its 1971 balance sheet were free and clear of prior encumbrances.

■■ It is apparent that the Referee's finding of insolvency of the bankrupt on February 28, 1971, was not only not clearly erroneous but is supported by the record. The record on review shows that there is more than sufficient evidence to support the Referee's finding. The proof adduced by the Trustee on the issue of insolvency, coupled with the lack of proof and lack of evidence to support the factual contentions of the defendant, meets the preponderance of evidence requirement. Jones v. Rowland, 457 F.2d 44, 46 (10th Cir. 1972). The alleged lack of direct proof of insolvency on February 28, 1971, is adequately counterbalanced by the totality of the evidence, of the bankrupt's financial condition during the year 1971, and the sound evidentiary inference of insolvency based on the proof of insolvency immediately subsequent to the transfer date of February 28, 1971. Haynes & Hubbard, Inc. v. Stewart, *supra*; Marshall v. Showalter, 245 F.Supp. 365 (D.Colo. 1965), affirmed, 375 F.2d 529 (10th Cir. 1967). The record fails to show, and the defendant has not attempted to establish, that the insolvent financial condition of the bankrupt underwent any "substantial or radical changes" prior to the filing of the petition in bankruptcy on October 19, 1971, and including the period immediately before and after February 28, 1971. Haynes & Hubbard, Inc. v. Stewart, *supra*.

■■ A trustee in bankruptcy seeking to set aside a transfer as fraudulent bears the burden of proving that the bankrupt was insolvent at the time of transfer, or that the transfer thereby rendered the bankrupt insolvent. Marshall v. Showalter, 245 F.Supp. 365 (D. Colo.1965), affirmed, 375 F.2d 529 (10th Cir. 1967); Jones v. Rowland, 324 F.

Supp. 494 (D.N.M.1971), reversed on other grounds, 457 F.2d 44 (10th Cir. 1972); In re Security Products, 310 F. Supp. 110 (E.D.Mo.1969); Trautwein v. Mandel, 127 F.2d 567 (8th Cir. 1942). In the case at bar, the Trustee has adequately met that burden on the issue of insolvency. The defendant failed to rebut the evidence of proof submitted by the Trustee by cross-examination or by the introduction of evidence of solvency. Defendant's present attempt to dispute the weight accorded the evidence presented to the Referee is without merit. This Court must give ". . . due regard to the opportunity of the referee to judge of the credibility of the witnesses." Bankruptcy Rule 810. To the possible extent that the Referee's finding on the issue of insolvency is based on conflicting evidence, this Court concludes that there has been no showing of clear error by ". . . most cogent evidence of mistake and miscarriage of justice." In re Decker, 295 F.Supp. 501, 507 (W.D.Va.1969), affirmed, Woodson v. Gilmer, 420 F.2d 378 (4th Cir. 1970), cert. denied, 399 U.S. 928, 90 S.Ct. 2244, 26 L.Ed.2d 795 (1970); Gilmer v. Woodson, 332 F.2d 541, 546 (4th Cir. 1964); *see also*, United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746, 766 (1948); In re Rohar Associates, Inc., 375 F.Supp. 637, 639 (S.D.N.Y.1974).

The fourth criteria for establishing a fraudulent transfer under Section 67d(2)(a) has also been met in the case at bar. The evidence supports the Referee's finding that the transfer of the note and deed of trust on February 28, 1971, was made or incurred without fair consideration.

Section 67d(1)(e) of the Bankruptcy Act pertinently provides as follows:

". . . consideration given for the property or obligation of a debtor is 'fair' (1) when, in *good faith*, in exchange and as a *fair equivalent* therefor, property is transferred or an antecedent debt is satisfied, or (2) when such property or obligation is received in good faith to secure a

present advance or *antecedent debt in an amount not disproportionately small* as compared with the value of the property or obligation obtained." (Emphasis added.)

A consideration need not necessarily be a present consideration in order to be fair within the scope of Section 67d. 4 Collier, Bankruptcy, ¶ 67.-33, p. 503 (14th ed. 1972). Satisfaction or securing of an antecedent debt will qualify. Cohen v. Sutherland, 257 F.2d 737, 742 (2nd Cir. 1958); Gilmer v. Woodson, 332 F.2d 541, 547 (4th Cir. 1964); Mayo v. Pioneer Bank & Trust Company, 270 F.2d 823 (5th Cir. 1959), cert. denied, 362 U.S. 962, 80 S.Ct. 878, 4 L.Ed.2d 877 (1960); DeAragon v. Chase Manhattan Bank, 322 F.Supp. 1006, 1010 (D.P.R.1971), affirmed, 457 F.2d 263 (1st Cir. 1972). In security transactions, the consideration must be a "fair equivalent" for the property transferred or obligation incurred. 4 Collier, Bankruptcy, ¶ 67.33, p. 505 (14th ed. 1972). When property is transferred or an obligation incurred for purposes of security, it is only necessary that its value not be disproportionately large as compared with the amount of the advance or debt secured. *See,* In re Decker, 295 F.Supp. 501 (W.D.Va.1969), affirmed, Woodson v. Gilmer, 420 F.2d 378 (4th Cir. 1970), cert. denied, 399 U.S. 928, 90 S.Ct. 2244, 26 L.Ed.2d 795 (1970).

Under Section 67d, fair consideration requires both (1) a fair equivalent, and (2) good faith on the part of the transferee. In re Southern Land Title Corp., 316 F.Supp. 1059, 1062–1063 (E.D.La.1970), affirmed, 474 F.2d 1033, 1036 (5th Cir. 1973); Cohen v. Sutherland, 257 F.2d 737 (2nd Cir. 1958); In re Messenger, 32 F.Supp. 490 (E.D.Pa. 1940); Bullard v. Aluminum Company of America, 468 F.2d 11, 13 (7th Cir. 1972). The absence of good faith even though a fair equivalent passes, may render a transfer fraudulent under Section 67d. 4 Collier, Bankruptcy, ¶ 67.-33, p. 506 (14th ed. 1972); *see also,*

Duberstein v. Werner, 256 F.Supp. 515, 522 (E.D.N.Y.1966); In re B–F Building Corp., 312 F.2d 691, 694 (6th Cir. 1963). The requirement of good faith is equally applicable where the satisfaction or securing of an antecedent debt as fair consideration is alleged. DeAragon v. Chase Manhattan Bank, 322 F.Supp. 1006, 1010 (D.P.R.1971), affirmed, 457 F.2d 263, 266 (1st Cir. 1972); Gilmer v. Woodson, 332 F.2d 541 (4th Cir. 1964); Nicklaus v. Peoples Bank & Trust Co., 258 F. Supp. 482 (E.D.Ark.1965), affirmed, 369 F.2d 683 (8th Cir. 1966), Bullard v. Aluminum Company of America, 468 F.2d 11, 13 (7th Cir. 1972).

Whether a fair consideration has passed in any given transaction under Section 67d must depend on all the surrounding circumstances of the case. In re North Babylon Estates, Inc., 30 F. 2d 372 (2nd Cir. 1928); Folsom v. Seapy, 10 F.2d 322 (8th Cir. 1925); Bullard v. Aluminum Company of America, 468 F.2d 11, 13 (7th Cir. 1972); In re Southern Land Title Corp., 316 F.Supp. 1059 (E.D.La.1970), affirmed, 474 F.2d 1033, 1037 fn. 5 (5th Cir. 1973); 4 Collier, Bankruptcy, ¶ 67.33, p. 508 (14th ed. 1972). The determination of the question whether fair consideration has been given for a transfer has been held to be ". . . largely a question of fact, as to which considerable latitude must be allowed to the trier of the facts." DeAragon v. Chase Manhattan Bank, 322 F.Supp. 1006 (D.P.R.1971), affirmed, 457 F.2d 263, 266–267 (1st Cir. 1972); Mayo v. Pioneer Bank & Trust Co., 270 F.2d 823, 829 (5th Cir. 1959); cert. denied, 362 U.S. 962, 80 S. Ct. 878, 4 L.Ed.2d 877 (1960); In re Peoria Braumeister Co., 138 F.2d 520, 523 (7th Cir. 1943); Roth v. Fabrikant Brothers, Inc., 175 F.2d 665, 668 (2nd Cir. 1949); In re B–F Building Corp., 312 F.2d 691, 694 (6th Cir. 1963). Another court has held that the determination of what is fair consideration ". . . is a question of law, but it depends in large measure on the supporting determination of fact made by the Referee." In re Christian and Por-

ter Aluminum Co., 316 F.Supp. 1340, 1342–1343 (N.D.Cal.1970).

■ In contrast, courts have generally held that the question whether a transfer has been made in good faith is one of fact. In re Southern Land Title Corp., 316 F.Supp. 1059 (E.D.La.1970), affirmed, 474 F.2d 1033, 1037 (5th Cir. 1973); Mayo v. Pioneer Bank & Trust Co., 270 F.2d 823 (5th Cir. 1959), rehearing denied, 274 F.2d 320 (5th Cir. 1960), cert. denied, 362 U.S. 962, 80 S. Ct. 878, 4 L.Ed.2d 877 (1960). The question of good faith in turn ". . . depends under the circumstances on whether the 'transaction carries the earmarks of an arms-length bargain.' " Bullard v. Aluminum Company of America, 468 F.2d 11, 13 (7th Cir. 1972); Holahan v. Henderson, 277 F.Supp. 890 (W.D.La.1967), affirmed, 394 F.2d 177 (5th Cir. 1969).

■ For purposes of this opinion, it is concluded that the question whether fair consideration has been given for a transfer is a mixed question of law and fact. However, the ultimate fairness question is largely a question of fact, being dependent on the supporting determinations of fact made by the Referee, one of which is the question of good faith. DeAragon v. Chase Manhattan Bank, *supra*; Mayo v. Pioneer Bank & Trust Co., *supra*; In re Southern Land Title Corp., *supra*; In re Christian and Porter Aluminum Co., *supra*. In addition, this Court follows the recognized principle that wide or considerable latitude must be given to the trier of fact, who in the case at bar is the Referee, in respect to the ultimate resolution of such questions. DeAragon v. Chase Manhattan Bank, *supra*; Mayo v. Pioneer Bank & Trust Co., *supra*; In re Southern Land Title Corp., *supra*; *see also*, Roth v. Fabrikant Brothers, Inc., 175 F.2d 665, 668 (2nd Cir. 1949), In re B–F Building Corp., 312 F.2d 691, 694 (6th Cir. 1963).

The record reveals that on February 28, 1971, four months prior to Mr. Kirshner's death and seven months and nineteen days defore the petition in bankruptcy was filed, Mr. Kirshner endorsed and transferred to himself a promissory note given by the Church on October 1, 1969, in the original sum of $13,000.00, on which there remained unpaid the sum of $12,354.97. This promissory note which Mr. Kirshner transferred to himself was secured by a deed of trust encumbering property located at 2645 Brooklyn, Kansas City, Missouri. At the same time, Mr. Kirshner caused the balance of his open and unsecured account with the bankrupt to be reduced by the same amount of the principal balance then owing on this note, which was $12,354.97.

At the time of this transfer, Mr. Kirshner was aware of the precarious financial condition of the bankrupt. Losses were being sustained at the rate of approximately $3,000.00 per month. The bankrupt's unsecured obligation had little or no value. In exchange for a $12,354.97 unsecured debt, Mr. Kirshner received a secured note of $12,354.97.

Considering all the facts that attended this transaction, it is concluded that the transaction was not in good faith and that a fair equivalent was not given for the transfer by Mr. Kirshner. The Referee's finding, that the receipt of a secured note is not the fair equivalent of an unsecured indebtedness, is not clearly erroneous nor without ample evidentiary support in the record as a whole.

The transfer of February 28, 1971, must be viewed in light of all the surrounding circumstances which attended that transaction. In re Southern Land Title Corp., *supra*; Bullard v. Aluminum Company of America, *supra*; 4 Collier, Bankruptcy, ¶ 67.33, p. 508 (14th ed. 1972). In particular, the unique relationship between Mr. Kirshner and the bankrupt must be noted.

■ A review of the record shows that Mr. Kirshner was the President, Director, managing officer and controlling stockholder of the bankrupt. Although he was formally referred to as a "client," it is apparent that Mr. Kirsh-

ner was the alter-ego of the bankrupt. The affairs and management of the bankrupt were dominated by Mr. Kirshner. The unsecured open account which was credited periodically by the bankrupt in favor of Mr. Kirshner was essentially a " . . . corporate pocket of the dominant stockholder, who, with disregard of the substance or form of corporate management, has treated its affairs as his own." Pepper v. Litton, 308 U.S. 295, 309, 60 S.Ct. 238, 246, 84 L.Ed. 281, 291 (1939); Duberstein v. Werner, 256 F.Supp. 515, 521 (E.D.N.Y.1966). Mr. Kirshner was the alter-ego of the bankrupt. *See*, Holahan v. Henderson, 277 F.2d 890, 898 (W.D.La.1967), affirmed, 394 F.2d 177 (5th Cir. 1968).

Under these circumstances, the transaction of February 28, 1971, and Mr. Kirshner's dealings with the bankrupt must be subjected to "rigorous scrutiny." With respect to the challenged transaction " . . . the burden is on the director or stockholder not only to prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein." Pepper v. Litton, 308 U.S. 295, 306, 60 S.Ct. 238, 245, 84 L.Ed. 281, 289 (1939); Geddes v. Anaconda Copper Mining Co., 254 U.S. 590, 599, 41 S.Ct. 209, 65 L.Ed. 425, 432 (1921). "The essence of the test is whether or not under all the circumstances the transaction carries the earmarks of an arm's length bargain." Pepper v. Litton, *supra*; *accord*, Bullard v. Aluminum Company of America, *supra*; Holahan v. Henderson, *supra*.

In addition, this Court may review the inherent equitable nature of the transaction, based on the established principle that courts of bankruptcy are essentially courts of equity, and their proceedings are inherently proceedings in equity. Pepper v. Litton, 308 U.S. 295, 304, 60 S.Ct. 238, 244, 84 L.Ed. 281, 287 (1939); Local Loan Co. v. Hunt, 292 U.S. 234, 240, 54 S.Ct. 695, 697, 78 L.Ed. 1230, 1232 (1934); *accord*, Holahan v. Henderson, 277 F.Supp. 890, 898

(W.D.La.1967), affirmed, 394 F.2d 177 (5th Cir. 1968); In re Black Ranches, Inc., 362 F.2d 8, 15–16 (8th Cir. 1966), cert. denied, 385 U.S. 990, 87 S.Ct. 595, 17 L.Ed.2d 450, 451 (1966).

Furthermore, because of his position as President, Director, managing officer and controlling stockholder of the bankrupt, Mr. Kirshner's actions with respect to the transaction of February 28, 1971, must be viewed in light of his fiduciary relationship to the bankrupt, stockholders and creditors of the bankrupt. *See*, United States v. Byrum, 408 U.S. 125, 92 S.Ct. 2382, 33 L.Ed.2d 238 (1972), reh. denied, 409 U.S. 898, 93 S.Ct. 94, 34 L.Ed.2d 157 (1972). Under both the substantive state law of Missouri, Ramacciotti v. Joe Simpkins, Inc., 427 S.W.2d 425 (Mo.Sup.1968); Gieselman v. Stegeman, 443 S.W.2d 127 (Mo.Sup.1969); Saigh ex rel. Anheuser-Busch, Inc. v. Busch, 396 S.W.2d 9 (Mo.App.1965), cert. denied, 384 U.S. 942, 86 S.Ct. 1465, 16 L.Ed.2d 541 (1966), and the federal standards as applied in Missouri, Union Electric Company of Missouri v. Boehm, 92 F.Supp. 177 (E.D.Mo.1950); American Investment Company of Illinois v. Lichtenstein, 134 F.Supp. 857, 861 (E.D.Mo.1955), the fiduciary relationship between Mr. Kirshner and the bankrupt, stockholders and creditors of the bankrupt had to be one of trust and confidence. This relationship imposed upon Mr. Kirshner the burden and duty of acting with utmost good faith in the best interests of the bankrupt, stockholders and creditors of the bankrupt, and required him to refrain from exploiting his position while in a strategic position of the highest trust, for his own personal profit and to the detriment of the bankrupt, stockholders, or creditors of the bankrupt.

The record reveals, and defendant has failed successfully to controvert the fact that the bankrupt's business had been failing for years and that it was in a hopeless financial condition on February 28, 1971. Few of its properties were worth the debts secured by

prior liens. The one note selected by Mr. Kirshner to be transferred to himself was one of the few secured notes of full value. Without regard to the bankrupt or creditors of the bankrupt, Mr. Kirshner transferred the well-secured note to himself. His entire claim against the bankrupt at the time of the transfer was worthless, but immediately thereafter it was worth at least $6,100.-00, according to the evidence presented to and the findings of the Referee.

The record presented to this Court supports the Referee's finding that Mr. Kirshner breached his fiduciary duty to the bankrupt and its creditors. The record further supports the conclusion that the defendant has failed to point to any substantial evidence that the transfer of February 28, 1971, was in good faith and inherently fair with respect to the bankrupt and its creditors. There is no indication that the transaction carried the earmarks of an arms' length bargain. For these reasons, it must be separately and independently concluded that the transfer was fraudulent as to the bankrupt's creditors.

■ Alternatively, it is concluded that defendant has failed to rebut the plaintiff's showing and the Referee's finding that Mr. Kirshner did not give a present fair equivalent for the transfer. For this separate and independent reason, the transfer was fraudulent.

■ It is further concluded that Mr. Kirshner did not satisfy an antecedent debt in an amount fairly proportionate

in value with the value of the note transferred to him.[1] For this separate and independent reason, the transfer was fraudulent.

■ Furthermore, it is concluded that the Trustee has proven that the transfer was not made in good faith.[2] For this separate and independent reason, the transfer was fraudulent.

Upon a full and careful review of the record and the respective briefs presented to this Court in regard to the issues raised herein, it is hereby concluded that the Referee's findings of fact are not clearly erroneous. It is also concluded that the evidentiary record presented to this Court amply supports the findings and conclusions of the Referee. The defendant has failed to present any additional factual or legal contentions which would justify disapproval of the Referee's decision, or otherwise indicate that a mistake or miscarriage of justice has taken place. Therefore, the order of the Referee in Bankruptcy of November 19, 1973, will be affirmed.

For all of the foregoing reasons, it is therefore

Ordered and adjudged that the order of the Referee in Bankruptcy of November 19, 1973, finding the transfer of a certain promissory note on February 28, 1971, to be fraudulent and void as against the plaintiff and directing that the note and deed of trust and proceeds collected thereon be turned over to the plaintiff, be, and it is hereby, affirmed.

---

1. Defendant asserts that an antecedent debt was satisfied in an amount not disproportionately small as compared with the value of the note obtained. In support thereof, defendant relies on United Milk Products Co. v. Lawndale National Bank of Chicago, 392 F.2d 876 (7th Cir. 1968); Tipton v. Miller, 79 F.2d 298 (8th Cir. 1935); In re Handerson, 3 F.Supp. 92 (S.D.N.Y.1933); Strongin v. International Acceptance Bank, Inc., 70 F.2d 248 (2nd Cir. 1934); and Morrisville Trust Co. v. Moon, 21 F.2d 716 (3rd Cir. 1927). Defendant's reliance on the above-noted cases is misplaced. Without specifically distinguishing each case relied upon, suffice it to say that the case at bar, as distinguished from those relied upon by the defendant, involves the transfer of a valuable secured note in exchange for the alleged satisfaction of an antecedent debt of little or no value. The secured note's value was disproportionately large as compared to the value of the antecedent debt allegedly satisfied.

2. See, In re B–F Building Corp., 312 F.2d 691, 694 (6th Cir. 1963).